*UTICA,
October, 1820.*

BANK OF
AMERICA
v.
WOODWORTH.

----

## BANK OF AMERICA *against* WOODWORTH.

*ASSUMPSIT* on a promissory note, dated *Albany, April* 17th, 1817, for 2,500 dollars, made by *James Kane,* payable at the knowledge or consent of the endorser, (both of whom resided in *Albany,* where the note was made,) added in the margin, " payable at the bank of *America*," and payment was demanded at that bank, in the city of *New York,* and due notice of non-payment sent by post to the endorser, in *Albany:* *Held,* that the addition of the place of payment was an immaterial alteration, and that the demand and notice were sufficient to charge the endorser.

After a note was made and endorsed, the maker, without

UTICA,
October, 1820.

BANK OF
AMERICA
v
WOODWORTH.

able sixty days after date, to the defendant or his order, endorsed by him, and by *John Kane*, to the plaintiffs.    In the margin of the note was written the following words : " Payable at the *Bank of America, James Kane*."    The cause was tried in *December*, 1818, before the Chief Justice.  The plaintiffs proved the making of the note, and the endorsement by the defendant, that payment was demanded at the *Bank of America* on the 19th of *June*, 1818, which was refused, and that notice of non-payment was regularly given to the defendant, who resided in *Albany*, by a letter to him. sent by the first post thereafter. The defendant's counsel insisted, that the plaintiffs had not made out their case ; that they ought to have proved, in the first instance, that the memorandum in the margin of the note, was made before it was endorsed by the defendant, as it formed no part of the contract.    The Chief Justice inclined to the opinion that the presumption of law was, that the memorandum was made prior to the endorsement.    The defendant then called *James Kane*, the maker of the note, as a witness, who was objected to, but the objection was overruled.    The witness testified, that the note was made and endorsed for his accommodation ; that after the defendant had endorsed the note, and after it was delivered to the witness, he made and subscribed the memorandum in the margin of the note, without the knowledge or consent of the defendant : That the witness then resided, and has continued to reside, ever since, in *Albany ;* that after the endorsement of the note by the defendant and by *John Kane*, it was discounted by the plaintiffs, for the use and benefit of the witness.

A verdict was taken for the plaintiffs, by consent, subject to the opinion of the Court on the above case, with leave to either party to turn the same into a special verdict.

*Hoffman,* for the plaintiffs. 1. The note was not made payable at any particular place.    A demand of payment, therefore, of the defendant personally, or at such place as he should appoint for that purpose, was sufficient. (*Thompson* v. *Ketchum,* 4 *Johns. Rep.* 285. *Anderson* v. *Drake,* 14 *Johns. Rep.* 114.)    The maker of a note is liable every where.

2. It is competent to the maker of a note to appoint a place of payment, and a demand at such place is sufficient to charge the endorser. (*Saunderson and others* v. *Judge*, 2 *Hen. Bl.* 509.) In the case of the *State Bank* v. *Hurd*, (12 *Tyng's Mass. Rep.* 172.) where the maker had, after the note was made, directed that the bank notice should be left for him at a particular place, the Supreme Court of *Massachusetts* were of opinion, that this was equivalent to a more formal demand, and dispensed with the necessity of making a demand at his house or usual place of business. A personal demand of payment, where no place is fixed in the note for that purpose, is always sufficient. It is, then, in the power of the maker, by changing the place of his residence, before the note falls due, to fix a place of demand different from that in which he resided when it was made. *A fortiori*, he may, by special agreement, appoint the place of payment. The endorser of a note is like the drawer of a bill of exchange, and the maker like the acceptor of a bill ; (*Chitty on Bills*, 238. 2d ed.) and this resemblance being fixed, the law is the same in regard to both. Now, it is the common practice of merchants to accept bills payable at a particular place ; and such acceptances have been held valid, though the Courts in *England* have differed in their opinion as to the effect of such a qualified acceptance. (*a.* (*Gammon* v. *Schmoll*, 5 *Taunt.* 344. *Lyon* v. *Sundius*, 1 *Campb. N. P. Rep.* 424. *Head* v. *Sewell*, 1 *Holt N. P. Rep.* 363. *Price* v. *Mitchell*, 4 *Campb. N. P. Rep.* 200.)

3. Adding the place of payment by the maker, after the note was endorsed, was not a material alteration, nor did it vary the responsibility of the parties. (*Bayley on Bills*, 43, 44. *Smith* v. *Abbot*, *Str.* 1152. 2 *Wils.* 9. *Trapp* v. *Spearman*, 3 *Esp. N. P. Rep.* 57. 1 *Campb. N. P. Rep.* 82. *note.*) In *Marter* v. *Miller*, (4 *Term Rep.* 320.) the date of the bill was altered, after it had been accepted, so as to accelerate the day of payment, and the alteration was, therefore, held material. Where a blank note is endorsed, and the blanks are, afterwards, filled up by the holder, the note is considered valid and binding on the endorser. (*Russell* v. *Langstaff*, *Doug.* 514.)

(a) Vide 17 *Johns. Rep.* 248. 257. note.

UTICA,
October, 1820.

BANK OF
AMERICA
v.
WOODWORTH.

UTICA,      4. *James Kane,* being the maker of the note, was not a
October, 1820.  competent witness. (*Skilding* v. *Warren,* 15 *Johns. Rep.* 270.
BANK OF    *Hubbly* v. *Brown,* 16 *Johns. Rep.* 70.)
AMERICA
v.
WOODWORTH.    *T. A. Emmet,* contra, contended, that this case was dis-
tinguishable from any of the cases which had been cited.
The defendant had no notice of any addition to the note, or
of its alteration. (*Chitty on Bills,* 118, 119. 3 *Esp. N.
P. Rep.* 57.) The undertaking of an endorser is conditional;
it is, that he will pay the note, if the maker does not pay it,
after a proper demand of him, according to its tenor, and due
notice is given to the endorser of the default of the maker.
The engagement of the endorser must always be in refer-
ence to the condition of the note at the time of the endorse-
ment.  If a note is not made payable at a particular place,
the holder must use due diligence to find the maker, and if
he has removed to another place, he must demand payment
of him there; but where the place of payment is fixed, the
demand of payment need not be made elsewhere. (14
*Johns. Rep.* 114.  6 *Mass. Rep.* 524.) So, the undertaking
of the endorser must vary with the fact of the note being
payable, or not, at a particular place. The demand of the
maker, according to the terms of the note, is a condition
precedent to the liability of the endorser, who has a right
to insist that the demand should be made of the maker ac-
cording to the tenor of the note.  If, therefore, the contract
is varied, without the knowledge or consent of the collate-
ral promiser, he is discharged.  The undertaking of the de-
fendant was to be responsible, if a demand of payment was
made of the maker in *Albany,* his place of residence.  This
being an accommodation note, can make no difference.  In
*Saunderson* v. *Judge,* (2 *H. Bl.* 509 ) the memorandum at
the foot of the note was made by the maker, before the note
was negotiated.  So in the case of the *State Bank* v. *Hurd,*
both the maker and endorser gave directions as to the place
where the notices were to be left.  Suppose the maker, af-
ter the note has been endorsed, without the knowledge or
consent of the endorser, should appoint *Philadelphia* or
*Charleston,* as the place where payment was to be demand-
ed, a much longer time must elapse before the endorser
here could receive notice of non-payment, and his security

may be greatly diminished. If the maker is allowed to add one place of payment different from that in which he resides, or in which the note is dated, he may assign any place, however remote, for that purpose. The endorser, calculating on the place of payment to be that of the maker's residence, may suffer the means of indemnity to pass from his hands, supposing, from the lapse of time since the note was due, that it has been regularly paid. In *Outhwaite* v. *Luntley*, (4 *Campb. N. P. Rep.* 179.) after a bill had been drawn and endorsed, and left for acceptance, the date was altered from the 15th to the 5th *March*, without the consent of the drawers. Lord *Ellenborough*, who held it to be void, observed, that " it is impossible to say that postponing the time of payment is always advantageous to the parties liable on the bill. Without my knowing it, I may be out of *England* at the time when the bill I drew becomes dishonoured, and thus, having made no provision for it, from the belief that it was duly honoured some time before, this postponement may cause the ruin of my credit." So, in the present case, the endorser may suppose the note paid, as the maker lived in *Albany*, and he had received no notice of its being dishonoured, after the time of payment had elapsed; but if he is to be made liable on a notice of non-payment arriving from *Charleston* or *New-Orleans*, two months after, he may be ruined.

*Wells*, in reply. The memorandum in the margin of the note, was merely to give information where the maker was to be found. It formed no part of the contract. Whatever difference of opinion may exist among the Judges of the different Courts in *England*, it is the decision of this Court, in the case of *Wolcott* v. *Van Santvoord*, that the designation of the place of payment, makes no part of the contract, at least, as between the immediate parties, as the holder and maker, or the acceptor. But it is said, that putting this memorandum on the note after it was endorsed, rendered it void, as regards the defendant; but the note cannot be good as to the maker, and void as to the endorser. An alteration in a material part, vitiates it entirely, as to every person. *Chitty*, in stating what alterations are material, puts, by way of exam-

ple, this very case, the insertion of a place of payment, as an instance of an immaterial alteration, which did not affect the validity of the bill or note. (*Chitty on Bills*, 118, 119. 3 *Esp. N. P. Rep.* 57. 4 *Term Rep.* 320. *Marson* v. *Pettit*, 1 *Campb. N. P. Rep.* 82. n. 2 *Starkie's Rep.* 45.) The case of *Outhwaite* v. *Luntley*, was that of a material alteration in the date of the bill; and the observation of Lord *E.* must be taken in reference to that fact. The case of *Anderson* v. *Drake* does not support the proposition that the undertaking of the endorser is merely collateral, and that he will pay, if the maker does not, on demand, at his place of residence. *Thompson*, Ch. J. observes only, that the presumption is, that the note is payable where it is dated; and that presumption was rebutted, by proof that the maker, in fact, resided elsewhere. A demand of payment may be made of the maker personally, or at his place of residence, or at a place designated by him, for that purpose. The maker may dispense with a personal demand. This doctrine was laid down in *Saunderson* v. *Judge*, and recognized by this Court in *Anderson* v. *Drake*. In *Parker* v. *Gordon*, (7 *East*, 385.) it was decided, that to lay the foundation for an action against the acceptor, the demand of payment must be made at the place designated by the acceptor. Now, if the acceptor of a bill can, by his own act, designate the place of payment, why may not the maker of a note? The endorser's undertaking is equally collateral in the one case as in the other. It is begging the question, to say that the endorser's engagement is only to pay, in case the maker does not, after a demand at his place of residence. The undertaking is much broader; it is that he will pay, in case of non-payment by the maker, after a demand of him personally, or at the place he may appoint for that purpose. In the case in 12 *Mass. Rep.* the maker did fix the place of payment, without the assent of the endorser. The words of the reporter are, that " notices, &c. were left for the promiser, and for the defendant as endorser, at one *Metcalf's* shop, in *Corn-hill, Boston*, by direction of the said *L. & H. respectively.*" Suppose that there had been no place designated by the maker, in the present case, and he had come to *New-York*,

on the day of payment, and the holder had made a personal demand of him, and he had refused payment, would not that have been sufficient to charge the endorser, on due notice to him? If this doctrine produces any inconvenience to the endorser, it results necessarily from the contract to which he has given his consent. To hold that a maker or acceptor, after a bill or note is endorsed, cannot designate a place of payment, would greatly impede the negotiability of these instruments.

Again; the maker of the note, on the ground of interest, as well as principles of public policy, ought not to have been admitted as a witness. (*Powell* v. *Waters*, 17 *Johns. Rep.* 176. 10 *Johns. Rep.* 23. 15 *Johns. Rep.* 270. 16 *Johns. Rep.* 70.)

SPENCER, Ch. J. delivered the opinion of the Court. (After stating the facts.) The question made upon the argument is, whether, under these facts, a demand of payment at the bank of *America* was sufficient? On the part of the defendant, it was contended, that a personal demand of the maker at his residence, or place of business in *Albany*, was necessary; that it was not competent to the maker, by any act of his, to alter the place of payment; and there having been no personal demand, nor any demand at the residence or place of business of the maker in *Albany*, the endorser was discharged. When the note was endorsed by the defendant, it was not payable at any place. Had not the memorandum been made, and had the residence of the maker continued to be in *Albany*, and if he himself had been in *Albany* on the day the note fell due, undoubtedly, the demand must have been made of the maker, either personally, or at his place of business in *Albany*, to charge the endorser. If, however, the maker had changed his residence before the note fell due, or if he had been met with in *New-York*, or elsewhere, when the note fell due, a personal demand upon him would have been regular, and sufficient to fix the endorsers. It cannot be said, then, that it was any part of the contract, as between the immediate parties to the note, that demand should be made of the maker in *Albany*, or that the endorsers relied upon the ne-

UTICA,
October, 1820.

BANK OF
AMERICA
v.
WOODWORTH.

cessity of such a demand, or that the note was endorsed in the confidence or expectation that a demand of payment was to be made only in *Albany*. In *Anderson* v. *Drake*, (14 *Johns. Rep.* 114.) it was decided, that a bill or note is not payable where it is dated, but that where no place is appointed in the note itself, it must be demanded at the known permanent residence of the maker. In that case, when the note was given, the maker resided in *New-York*, and before it fell due he removed to *Kingston*, which fact being known to the holder when the note fell due, we held, that payment ought to have been demanded of him at *Kingston*. In *Wolcott* v. *Van Santvoord*, (17 *Johns. Rep.* 248.) it was decided, that the time and place of payment formed no essential part of the contract, as between the immediate parties to a note or bill, although, as regards the endorser, and to charge him, it is necessary to use due diligence, by demanding payment of the maker or acceptor, on the day the note or bill falls due, and giving notice on that, or the subsequent day, to the endorser. The note being silent as to the place of payment, is it not competent to the maker to designate a place where payment shall be made ? And if so, will not a demand at such place be sufficient, and dispense with the necessity of a personal demand ?

The case of *Saunderson and others* v. *Judge*, (2. *H. Bl.* 509.) seems to me to be very much in point on this part of the case. The action was on a note by the last endorser against the second endorser, and one of the questions was, whether a regular demand of payment had been made upon *Sharp*, the maker of the note. At the foot of the note was a memorandum by *Sharp*, that he would pay it at the house of *Saunderson & Co.* the plaintiffs in the suit. Some time before the note fell due, *Sharp* absconded, and there was no demand on him. The Court decided, that it was no part of the contract that the note should be paid at the house of *Saunderson & Co.* and, therefore, it need not be stated in the declaration ; that the maker had merely appointed the house of his banker *as the place* where he was to be called upon for payment, and when it would be paid ; yet this was both an undertaking that there should be cash there, and also an order to the banker to pay it ; that it was not necessary a de-

mand should be personal; it was sufficient if it be made at the house of the maker of the note, and it was the same thing, in effect, if it be made at the place where he appoints it to be made; that if *Judge* had been the holder of the note, it would have been enough for him to have presented it for payment at the house of *Saunderson & Co.*; and as they at whose house it was to be paid, were themselves the holders of it, it was a sufficient demand, for them to turn to their books and see the maker's account with them, and a sufficient refusal, to find that he had no effects in their hands. In *Price* v. *Mitchell*, (4 *Camp. N. P. Rep.* 200.) the action was brought by the endorser against the maker of a promissory note, at the foot of which were these words: " at Messrs. *Veres, Smart & Co.* 77 *Lombard-street, London.*" It was contended for the defendant, that the note when due ought to have been presented for payment, at Messrs. *Veres, Smart & Co.* *Gibbs*, Chief Justice, was of opinion, that the words at the foot of the note were only a memorandum *where payment might be demanded.* He observed, that had they been inserted in the body of the note, they would have formed a part of the contract, and a presentment then would have been necessary; and he referred to the last edition of *Bailey*, (96.) where it is said, " if a note be made payable at a particular place, and the place be mentioned in the body of the note, presentment for payment must be made at that place; but where the place is mentioned in the margin, it does not appear that such presentment is necessary:" Chief Justice *Gibbs* added, that when the direction to the place of payment is mentioned in the margin, or at the foot of the note, as in that case, the inspection and perusal of the instrument show that it was not intended to be any condition to the absolute promise to pay in the body of the note. In *Trapp* v. *Spearman*, (3 *Esp. Rep.* 57.) in assumpsit by the endorser against the acceptor, the defence set up was, that the bill of exchange had been altered after it was given. The alteration was, " when due, at the *Cross Keys, Black Friars Road.*" Lord *Kenyon* said, it was not an alteration, either in the time of payment or in the sum; that to make a bill void by reason of an alteration, it should be in a material part. Though it had been formerly holden, that even

telling up a sum on a bill, or writing any thing on it, would invalidate it, that strictness was now exploded ; and as the alteration in that case was not in a material point, but only designating the place where the bill would be paid, it was not such an alteration as should invalidate the bill.

The analogy between bills of exchange and promissory notes becomes perfect, the moment a negotiable note is endorsed. The maker of the note is to be regarded in the same light as the acceptor of a bill. Now, nothing is more common among merchants, in *England*, than for the acceptor of a bill, payable in a given number of days, or in so many days after sight, to accept the bill payable at a banker's ; the bill itself being silent as to the place of payment. And it has uniformly been held, that a presentment of the bill at the place appointed by the acceptor for payment, is sufficient, and dispenses with the necessity of a personal demand. In *Parker* v. *Gordon*, (7 *East*, 385.) the bill of exchange had been accepted, payable at *Davison & Co's*. who were the acceptor's bankers in *London*. A question arose, whether the bill had been presented at the banker's in due season, on the day it was payable. Lord *Ellenborough* said, the person on whom the bill was drawn accepted it payable at *Davison & Co's*. who were his bankers, for the purpose of facilitating the payment, and if it were refused payment there, on due presentment, it would be a sufficient dishonour of the bill whereon to charge the drawer. *Lawrence*, Justice, said, the party might have refused to take the special acceptance ; but if he chooses to take the acceptance in that manner, payable at the banker's, does he not agree to take it payable at the usual banking hours ? That when a bill is accepted in this manner, it must be understood by all parties concerned, that it is to be presented for payment at the banker's, within the usual hours of business. *Le Blanc*, Justice, expressed himself to the same effect. The Courts of King's Bench and Common Pleas are at variance on the question, whether if a bill of exchange be accepted payable at a particular place, it is necessary, in an action against the acceptor, to aver a presentment of the bill at such place. Lord *Ellenborough*, in *Lyon* v. *Sundius and Sheriff*, (1 *Camp.* 424.) held, that such acceptance formed no part of the contract, and

said, that the judges were all of that opinion. In *Heard* v. *Sewell.* (1 *Holt's N. P. Rep.* 363.) Chief Justice *Gibbs* persisted in the same opinion. On the ground, then, that the memorandum in the margin of the note in this case, did not alter the contract, as between the immediate parties to the note; as it was an appointment of the place where the maker would pay the note ; and, as I think, upon authority that has not and cannot be shaken, the maker had a right to make such appointment, a demand of payment at the bank of *America* was sufficient. Notice having been regularly given of the dishonour of the bill at such place, the defendant is liable.

It has been urged, that in *Saunderson and others* v. *Judge,* the memorandum at the foot of the note, designating the place of payment, was made before the note was negotiated, and that therein consists the material difference between that case and this. It may be, that the memorandum in that case, was made before the negotiation of the note; but if it formed no part of the contract, in this case, that the note should be paid at the bank of *America,* the time when the memorandum was made is immaterial. It was a mere appointment of the place where the maker was to be called on for payment, and where it would be paid, and this the maker could do without reference to the endorsers. It was a circumstance within his control, and under his direction. We have seen, that if the maker of the note had removed to *New-York,* demand must have been made upon him there, had no place of payment been mentioned in the note, and if the maker had appointed no place of payment. So, also, if the maker had gone on a visit to *New-York,* or if he had gone there expressly for the purpose of having a demand made upon him there, a personal demand upon him in *New-York,* and a neglect to pay, would have been a dishonour of the bill, and rendered the endorser liable, on due notice to him. It was, then, a matter of entire volition on the part of *Kane,* where the demand should be made, and, as was well observed on the argument, the maker of the note could do by agreement, whatever he could do by his locomotive powers. The defendant having endorsed the note, without any restraint upon the maker, as to the

place of payment, he must be deemed to have left that circumstance to the discretion and control of the maker. In the parallel case of a bill of exchange, payable general-ly, as well may the drawer object, that the acceptor having qualified his acceptance by making the bill payable at a banker's in *London*, when the drawer and acceptor both resided in *Liverpool*, that the nature of the contract is al-tered; yet we see that nothing is more usual, and that it is perfectly settled, that a demand at such banker's is a sufficient demand.

It has been insisted, that if the maker of a note endorsed gratuitously, and for his accommodation, can appoint the place of payment, it puts it in his power, by appointing a distant place of payment, to increase the risk and respon-sibility of the endorser, without his assent, and contrary to his understanding of his engagement. In the first place, this can be guarded against, by inserting a place of payment in the note itself; and, in the next place, if the maker should appoint a place of payment so distant and remote as to impose an unreasonable risk on the endorser, it might be considered a fraud upon him. When such a case arises, it will deserve serious consideration, whether the endorser can be rendered liable. In the present case, it is not pretended that the defendant has been injured by the maker's appointing the place of payment; and the notice of the non-payment of the note was given within two or three days after it was dishonoured. In any light in which I have been able to place the question, I cannot doubt of the de-fendant's liability; and this is the opinion, also, of my bre-thren.

Judgment for the plaintiff.

WOODWORTH, J. being a party, did not, of course, sit in the cause.