## Taylor *vs.* Snyder.

The *dating* of a promissory note at a particular place does not make that the place of payment, or authorize a demand to be made at that place for the purpose of charging an endorser.

But it is presumptive evidence of the residence of the maker at that place. *Per* Beardsley, J.

Where no place of payment is mentioned in a note, the general rule is, that it must be demanded of the maker personally, or at his dwelling, or place of business, in order to charge the endorser.

But where the maker has absconded, or being a seaman without a domicil in the state is absent on a voyage, and also where he has no known residence or place of business at which a demand can be made, a presentment for payment is dispensed with, and the endorser will be liable on receiving notice of the facts constituting the excuse. *Per* Beardsley, J.

So where the maker being a resident of the state when the note is made, removes therefrom and takes up a permanent residence elsewhere, the holder need not follow him, but a demand at his former place of residence will suffice. *Per* Beardsley, J.

But to enable the holder to charge an endorser without a demand of the maker, the facts creating the exception must be distinctly proved. *Per* BEARDSLEY, J.

The legal effect of the contract of an endorser stated. *Per* BEARDSLEY, J.

Where the maker has a known residence when the note is given, which is not changed before it becomes payable, a regular demand must be made, though the note is given and dated at a different place from his residence.

Accordingly, where one who resided in Florida made a note at Troy, dating it at the latter place, and continued to reside in Florida until it became due, which fact was known to the holder, who instead of causing a demand to be made of the maker, procured the note to be presented to the endorser residing at Troy, and then gave him notice of non-payment; *held* that there was nothing in the case to dispense with a demand of the maker, and that the plaintiff could not recover.

ASSUMPSIT on a promissory note by endorsee against endorser. The note was made by M. Snyder, payable to the order of the defendant for $177 in one year from date, no place of payment being mentioned, and was dated at Troy, October 15th, 1839. On the trial, the endorsement of the note by the defendant and also by G. P. Morris was admitted. It appeared that M. Snyder, the maker, before and at the time the note was dated resided at Apalachicola, in Florida, and that he continued to reside there until after it became due. The note was given directly to Morris, and the evidence tended to show that it was given for a debt which the maker owed him, and that the defendant endorsed it for the accommodation of the maker. Morris when he received the note, knew that the maker resided in Florida, but it did not distinctly appear that he knew at what place in Florida he lived. When it was running to maturity Morris called upon the defendant who resides at Troy and asked him to stipulate to pay the note himself at Troy, which he declined to do. He however said that the maker, who was his brother, would send him the money, and that he should see that the note was paid at maturity. At this time he informed Morris that the maker resided at Apalachicola. After this, and a month or two before the note fell due, Morris transferred it to one Stevenson, who knew that the maker lived in Florida, and who owned the note at the time of the trial.

On the day the note fell due, the plaintiff caused it to be presented *to the defendant at his store in Troy* for payment, which

was refused, the defendant saying that the maker lived in Flori-
da.   Notice that the note was not paid, and that the holder look-
ed to him for payment was then given to the defendant.   Upon
this evidence the circuit judge held that the plaintiff was not
entitled to recover, and directed a nonsuit to be entered.

*H. W. Strong*, for the plaintiff, moved to set aside the non-
suit and for a new trial, on a case.

*J. D. Willard*, for the defendant.

*By the Court*, BEARDSLEY, J.   As the note bears date at Troy,
it is presumed to have been made at that place, although the
maker then resided in Florida, as was well known to the original
holder, Morris, and to Stevenson, to whom it was subsequently
transferred.   The residence of the maker had not been changed
when the note fell due, his domicil still being in Florida.

The endorser resided in Troy.   It was not shown that he
ever owned the note, or was under any other obligation for its
payment than that of an ordinary endorser; and it may fairly
be inferred from the case that the note was given for a debt due
from the maker to Morris, and was endorsed for his benefit at
the request of the maker.

Some months before the note fell due, the endorser had been
asked by the then holder, Morris, if it would be paid at maturi-
ty, to which he replied that it would be; that his brother, the
maker, would send the money to him and he should see the
note was paid.   But on being requested to stipulate, absolutely,
to pay the note himself, he declined to do so.   It does not appear
that on this or any other occasion, any thing was said as to the
place where payment would be made, or where the note should
be presented for payment at maturity.

Upon the evidence as stated in the case, I think it cannot be
said that any thing has been done by the endorser to change or
affect his original liability or his rights, in that character.   He had
not designated any particular place in Troy, or that city at large
as the place at which the note would be paid, or where demand

should be made, nor had he been requested to designate any place for that purpose. And although he certainly gave a strong assurance that the maker would remit the money to him, and therefore that the note would be duly paid, he at the same time refused to bind himself absolutely for its payment. He chose to leave his own responsibility where his contract and the law had placed it; and no one had a right to understand from what he said, that he intended to assume any new obligation, or to dispense with the performance of any act which the law required the holder of the note to perform. It does not appear to have been suggested on the trial, that the action was to be sustained on any such ground, nor was the judge requested to submit the question of a waiver of demand of payment, by the endorser, to the jury. It was doubtless then urged, as it was on the argument at bar, that this note was by law payable at Troy, and therefore the defendant had been duly charged as endorser, and not that he had in any manner waived a demand at the proper place.

What then is this case? A debtor, whose residence is in Florida, being at Troy, makes a note, which he dates at that place, to his creditor, a resident of this state, for an amount due to him, and procures a friend, residing at Troy, to endorse the same. No place of payment is specified in the note, nor is there any thing to indicate a place, unless that follows from the note bearing date at Troy. The holder knows the residence of the maker to be in Florida, but when the note falls due, instead of making demand of the maker personally, or at his residence or place of business in Florida, payment is demanded at Troy and not elsewhere. Was this a sufficient demand as respects the endorser? It clearly was, if the note was by law payable at that place, and it, as clearly, was not, if the note was payable elsewhere. This is the only question to be determined.

The date of a note at a particular place does not make that the place of payment, or at which payment should be demanded for the purpose of charging the endorser. This was expressly adjudged in the case of *Anderson* v. *Drake*, (14 *John.* 114.) That was an action against the endorser of a promissory note.

bearing date in the city of New-York, but not made payable at any particular place. When the note was made the maker lived in New-York, but before it fell due he removed to Kingston in the county of Ulster. The counsel for the plaintiff insisted " that as the note was dated in New-York, and the parties resided there at the time it was made, it must be presumed, no particular place being designated for the payment, that it was payable in New-York : that the removal of the maker from New-York to any other place did not render it necessary for the holder to follow him for the purpose of demanding payment." But the court thought otherwise, and held that a demand of the maker personally, or at his residence or place of business in Kingston, as in ordinary cases, was necessary, and that the endorser could not be charged upon a demand made in the city of New-York, although the note bore date at that place. This I understand to be the settled and invariable rule where the maker has not removed from the state, but has a known residence within its limits. Where, after a note has been given, the maker absconds, removes into another state or country, or is without a fixed residence any where, other principles, as we shall see, apply : but in no case does the date of a note, of itself, make that the place where payment should be demanded in order to charge the endorser.

It has been supposed that the case of *Stewart* v. *Eden*, (2 *Caines*, 121,) countenances a different doctrine. Livingston, J. there said—" the note being dated in New-York, the maker and endorser are presumed to have resided, and contemplated payment there." This remark was in part strictly correct, for the date of the note was presumptive evidence of residence ; and in a general sense it may also be true that the date raises a presumption that the parties contemplated payment at that place. Judge Livingston did not say that the note was by law payable at the place of its date ; on the contrary, the form of expression conclusively repels that idea. He was not speaking of what the parties were bound to do by the terms of the note, of their legal obligations flowing from their engagements as maker and endorser, but simply of what they were presumed to have con-

templated. If the learned judge intended to affirm that a note, when no particular place of payment is otherwise indicated, is by law payable at the place where dated, he would have said so in direct terms, and would not have said it was to be presumed payment at that place was contemplated. This would have been absurd. But in truth the question whether the note in that case was payable where it bore date, was not before the court, nor was it there pretended that payment had not been duly demanded. It was an action against the representatives of a deceased endorser, and although an objection was taken to the form in which the presentment for payment was alleged in the declaration, it was not pretended by any one that the demand of payment had not been strictly correct. The main question in the case was, as to the sufficiency of the notice to the endorser, and the remark of the judge was made in discussing that point. I admit that upon the question of due diligence in giving notice to an endorser, it may have been very pertinent and proper to say that the parties are presumed to have contemplated payment at the place where the note was given and was dated, although such a remark would be altogether out of place in deciding upon the construction of an agreement, and whether the parties, by its terms, were bound to make payment at a particular place. There is nothing therefore in this remark of Judge Livingston which can be made to countenance the idea that a note, when no other place of payment is specified, is by law payable at the place of its date. (*Anderson* v. *Drake, supra; Bank of America* v. *Woodworth*, 18 *John.* 322.)

Where a promissory note is not made payable at any particular place, the general rule of law is, that in order to charge the endorser payment must be demanded of " the maker personally, or at his dwelling-house, or other place of abode, or at his counting house or place of business." (*Story on Prom. Notes,* § 235; *Bank of America* v. *Woodworth,* 18 *John.* 315; *S. C. in error,* 19 *id.* 391.) But although such is the general rule, yet, under various circumstances, a demand in any form or manner may be dispensed with. It is a question of diligence, and if a demand is found to be impracticable, proper efforts for that purpose hav-

ing been made, the endorser will still be held liable, due notice having been given to him by the holder.

Thus where the maker has absconded that will ordinarily excuse a demand, and notice of the fact is sufficient to hold the endorser. (1 *Ld. Raym.* 443, 743; 3 *Kent, 5th ed.* 96; *Putnam* v. *Sullivan,* 4 *Mass.* 53; *Lehman* v. *Jones,* 1 *Watts & S.* 126; *Chit. on Bills,* 10*th Amer. ed.* 354, *n.* 1; *Story on Prom. Notes,* § 237.)

Where the maker is a seaman on a voyage, having no domicil in the state, the endorser is liable without a demand being made. (*Barnett* v. *Wills,* 4 *Leigh,* 114.) But although the maker may be absent on a voyage, if he has a domicil in the state, payment must be demanded there. (*Dennie* v. *Walker,* 7 *N. Hamp.* 199; *Whittier* v. *Graffam,* 3 *Greenl.* 82.)

And in every case where the maker has no known residence or place at which the note can be presented for payment, the holder will in like manner be excused from making any demand whatever. (*Story on Prom. Notes,* § 237; *Whittier* v. *Graffam, supra; Putnam* v. *Sullivan, supra; Duncan* v. *McCullough,* 4 *S. & R.* 480.) But in all such cases, the reason for not making a demand must be shown on the trial of the cause. It must appear that the maker had absconded, was at sea, or had no known domicil or place where the note should be presented. The rule is strict, that a demand must be made, or a proper excuse shown for its omission.

There is a further exception to the rule requiring a demand to be made of the maker, or at his domicil or place of business; for where a note is made by a resident of the state, who, before it is payable, removes from the state and takes up a permanent residence elsewhere, the holder need not follow him to make demand, but it is sufficient to present the note for payment at the former place of residence of the maker. (*M'Gruder* v. *Bank of Washington,* 9 *Wheat.* 598; *Anderson* v. *Drake, supra; Dennie* v. *Walker, supra; Gillespie* v. *Hannahan,* 4 *M'Cord's R.* 503; *Reid* v. *Morrison,* 2 *Watts & S.* 401; 3 *Kent,* 96.) And this is just: for it is but reasonable to suppose that neither party, when the note was given, looked for a

change of residence to a foreign country, and that each contracted upon the supposition that no such change would take place. Nevertheless, as was said in *Dennie v. Walker*, (*supra*,) "this is an exception to the general rule, and must be construed strictly." "We think," say the court in *M'Gruder v. Bank of Washington*, (*supra*,) "that reason and convenience are in favor of sustaining the doctrine, that such a removal is an excuse from actual demand. Precision and certainty are often of more importance to the rules of law, than their abstract justice. On this point, there is no other rule that can be laid down, which will not leave too much latitude as to place and distance. Besides which, it is consistent with analogy to other cases, that the endorser should stand committed, in this respect, by the conduct of the maker. For his absconding or removal out of the kingdom, the endorser is held, in England, to stand committed."

These exceptions to the general rule, it will be seen, all rest on peculiar reasons. In one, the maker has absconded; in another, he is temporarily absent, and has no domicil or place of business within the state; in a third, his residence, if any he has, cannot be ascertained; while in the fourth, he has removed out of the state and taken up his residence in another country. In each of these instances, let it be observed, the fact, constituting the excuse, occurs subsequently to the making and endorsement of the note; and it is this new and changed condition of the maker, and that only, by which the endorser stands committed, without a regular demand.

We are, then, to inquire, whether these exceptions are to be multiplied, and extended to a case where no change in the condition of either party has taken place: where the maker, when the note was made and endorsed, had a known residence in another state, and which had remained unchanged at the maturity of the note. It is palpable that this exception, if made, must be placed on some new principle: it cannot be allowed on the ground which upholds the others. The facts in this case are unchanged, and as the reason for making an exception does not exist, the exception itself should not be allowed. Unless, therefore, the general position is true, that one who endorses for a

Taylor *v.* Snyder.

maker who lives in another state, may be "held liable without any demand being made on the maker," I think the defendant was not liable in the case at bar. And if any such general rule of law, as I have stated, exists, it certainly may be shown; but that it has no, existence, is, as I believe, not only according to the universal understanding amongst commercial men, but also according to the settled course of business, in the commercial world.

The endorsement of a note is an order to the maker to pay the amount to the endorsee or holder, as is specified and agreed in the note, and an engagement by the endorser, that if the note is duly demanded of the maker and not paid, or if it shall be found impracticable to make a demand, the endorser will himself, on receiving due notice, pay the amount to the endorsee or holder. Now, where such an order is drawn upon a maker who resides in another state, and which is well known to the person in whose favor the order is drawn, upon what principle can it be said that a demand of the maker is unnecessary? The endorsee voluntarily consents to take such an order, and why should he not perform the condition on which the ultimate liability of the endorser depends? I confess I see no reason why he should not. Here is no mistake, or misapprehension of fact, at the time the endorsement is made. The endorsee knows where the maker resides, and that it is in another state. He knows that by law, unless the intervention of a state line makes a difference, the maker must be sought where he resides, and the demand must be made there. When the time for payment arrives, the maker is still at his former residence: the facts of the case are precisely as they were when the order was drawn. Why, in such a case, should the state line make a difference in the construction and legal effect of this contract of the endorser? It was fairly entered into between the parties; let it then be fairly observed and performed by them.

I can well understand why such an order made by an endorser upon the maker of a note *then residing within this state,* but who removes into another state before the note falls due, should receive a different construction, and that it would be un-

reasonable to require the holder to follow the maker to his new residence in order to demand payment. Here, a new and unlooked for event has occurred, which, like the absconding of a maker, or an inability to discover his residence, may very reasonably be held to excuse a demand. In these respects, the endorser should be held to stand committed by the act of the maker. But where the facts, in reference to which the parties contracted, were fully known to them, and are in no respect changed, I am unable to discover any principle which will excuse the maker from making a demand, or using proper diligence to make a demand, as in ordinary cases. The intervention of a state line has, in my opinion, no possible bearing on the question.

I admit that I have not found any case in which this point has been expressly adjudicated, as I have stated it. It seems, however, to have been taken for granted, in the case of *McGruder* v. *The Bank of Washington*, already referred to. The case of *Duncan* v. *McCullough, adm'r, &c.* (4 *Serg. & Rawle,* 480,) was, in some of its features, much like the one at bar. It was an action against the administrator of an endorser of a note made by one Adams, bearing date at Baltimore, in Maryland, June 4, 1814, payable nine months from date, no place of payment being specified in the note. It did not appear, otherwise than by its date, where the note was actually made ; and it may be inferred from the evidence, that Adams was, at that time, a resident in Green village, Pennsylvania. It did not appear where he was when the note fell due, and no demand of payment had been made any where : nor was it shown that any search for the maker had been made. Here, then, was a note dated at Baltimore, no place of payment being stated in it, the maker living in another state. So far it is the case in hand, yet it was not even suggested, by the counsel or the court, that a demand was unnecessary, or that Baltimore was the proper place to make the demand. The case was disposed of on other grounds, and which could not have been in any respect material, if a demand at Baltimore would have been proper, or if none whatever was necessary. On the trial, the court charged

Taylor v. Snyder.

that the plaintiff was bound to prove a demand of payment of the maker, or due diligence used for that purpose, and upon this part of the case the final opinion of the court was thus stated by Chief Justice Tilghman : "If the plaintiff had proved that Adams had absconded, and was not to be found when the note fell due, a demand of payment would have been dispensed with, because it would have been impossible to make it. But no such thing was proved, and therefore a demand was necessary. The note being dated at Baltimore, would raise a presumption that Baltimore was the drawer's place of residence, as was decided by the supreme court of New-York, in 2 *Caines' Rep.* 127. Baltimore, then, was the place at which inquiry should have been made. The court laid down the law fairly. A demand, or at least due diligence in endeavoring to make a demand, was necessary." All this seems to me very just and proper. A demand was necessary : the note was dated at Baltimore, and if the residence of the maker was unknown, Baltimore was the place where inquiry should have been made. But if, as is now urged, Baltimore was the place to demand payment, or if no demand was required, the argument of counsel, in the case referred to, and the views of the court, were entirely wide of the mark. And here let me observe, that although the date of a note does not make it payable at that place, still, the date may, in one respect, be very important. It raises a presumption that the maker resides there, although it is only presumption. (3 *Kent,* 96, 7 ; *Lowery* v. *Scott,* 24 *Wend.* 358 ; *Galpin* v. *Hard,* 3 *McCord,* 394.) And where it becomes a question of due diligence in seeking to make a demand, it may be all important to show that inquiry was made at the place where the note bears date. But here, this point is of no consequence, for the residence of the maker was known to all parties, and not the least effort was made to make demand of him where he lived, or at any other place than Troy, where the endorser resided, the maker then being at his home in Florida.

I am aware that Judge Story, in his treatise on promissory notes, after adverting to various grounds on which a demand of payment may be excused, says, " It seems also, that if the maker

of a promissory note resides and has his domicil in one state, and actually dates and makes, and delivers a promissory note in another state, it will be sufficient for the holder to demand payment thereof at the place where it is dated, if the maker cannot personally, upon reasonable inquiries, be found within the state, and has no known place of business there." (§ 236.) For this he refers to the case of *Hepburn* v. *Toledano*, (10 *Louis. R.* 643.) It will be observed that Judge Story does not give to this position the authority of his name and character; the point is stated doubtingly. It seems, he says, that under such circumstances the maker need not be sought in the state where he resides, and not that it is clear this will excuse the usual demand. The learned author was obviously doing no more than to state what seemed to him to have been decided in Louisiana, and he does it in a manner which precludes the idea that he intended to adopt the principle, or give to it any authority beyond that of the elevated and able tribunal by which the case was determined. I have looked at the report of the case of *Hepburn* v. *Toledano*. It was an action against the endorser of a promissory note dated at New-Orleans, but not made payable there. When the note was payable the maker resided in Kentucky; but where his residence was when the note was given, is not expressly stated. The only question in the case, as the court said, was whether the holder was obliged to go out of the state to demand payment; but whether that question arose upon a note given by a resident of Louisiana, who had subsequently removed to Kentucky, or by a person who lived in Kentucky when the note was made, is a fact upon which I cannot satisfy myself from any thing to be found in the report of the case. We have already seen that where the maker removes from one state to another, after the giving of a note, the holder need not follow him. This was said in *Anderson* v. *Drake*, in 14 *Johnson*, upon the authority of which the Louisiana case was decided. In the latter case the court say: " There is some difficulty as to the place where demand is to be made, when the maker of a note or acceptor of a bill has been a resident of the state, and before the time of payment, has changed his domicil ; but if he lives in another country, the en·

dorsees cannot be presumed to know his residence, and all that the law requires of the holder is due diligence at that place where the note is drawn. Thus in the case cited by the appellant, (14 *John.* 116,) it is stated by the court to have been previously decided, that where a note was dated at Albany, and the drawer of it afterwards removed to Canada, the demand where it was drawn was sufficient to charge the endorser." And it was held that the demand at New-Orleans was sufficient. I must say that my impression upon this case is that the maker of the note had removed from Louisiana after the giving of the note; but if the fact were otherwise, I think the decision should not be followed. The case is not strictly authority, although harmony in the decisions of the several state courts, upon such a point, is exceedingly desirable. But I cannot assent to the principle that where no change has taken place in the residence of the maker, between the making of the note and the time of its payment, the intervention of a state line dispenses with the necessity of making due demand of payment, or at all affects the question. I therefore think the nonsuit was right—and a new trial should be denied.

New trial denied.