Scott, J.
’ The alteration by which the defendant in this case claims to have been discharged, was made by interlining in the body of the note the words, “ payable at the office of Sturges & Hale.” Questions have frequently arisen upon the effect of a memorandum, made at the bottom or in the margin of a note, designating a place of ^payment, as to the point whether such memorandum forms a part of the contract, so as to constitute an alteration therein. But no such question arises here; for the alteration, *361 whether material or not, was incorporated into the note, and made to constitute part of its terms.
The principal, if not the only questions which the case presents, are: Was the alteration a material one as to the indorser? And if so, was it unauthorized by him? If either of these questions can be properly answered in the negative, the defendant was not discharged by the alteration; but if both questions must be answered affirmatively, the alteration discharges him, upon clear and well-settled principles.
As to the first point then, it would seem clear, that if, by giving effect to the alteration, the contract of the indorser is substantially changed, then the alteration is material as to him. It is not necessary to the materiality of the alteration, that it be such as must necessarily prejudice the defendant, nor that the proof show him to have been in fact damnified by the change. Eor, occupying the position of a surety, he may insist on the very terms of his contract. And if these terms are substantially varied, without his consent, he may well say that the new contract is one into which he never entered.
Now, what was the contract of the indorser, as it stood when the note in question loft his hands? The note was- payable generally, and the indorsement was in blank. This indorsement, taken in connection with the contract of the maker, as shown by the face of the note, constituted, by force of the commercial law, a definite contract. Its terms were, substantially, that he, the indorser, would pay the amount of the note to the holder, if, at its maturity, upon demand made of the maker either personally, or at his domicil, or usual place of business, payment should be refused, and due notice of such dishonor should be given to the indorser.
*This contract could not have been made more definite and certain by reducing its terms to writing. Is it, then, substantially varied by the subsequent alteration? Had the indorser consented to making the note payable at the office of Sturges & Hale, or had such been its terms at the time of indorsement, his contract, by the same commercial law, would have been that he would pay to the holder the amount of the note, if, at maturity, upon demand made at the specified place, payment should be refused, and due notice of dishonor given. Indeed, the note having been negotiated to Sturges & Hale, the liability of the indorser would become fixed, if at its maturity, there were no funds of the maker in the hands *362 of the holders applicable to its payment, and proper notice of dishonor were given. The effect of this alteration, then, is to dispense with the demand upon the maker personally, or at his residence or place of business, and thus to waive every thing calculated to call the attention of the maker to the subject, when the note matures.
Now, so far from its being true that this 'does not change the contract of the indorsor, its principle effect would seem to be upon that very contract. The demand of payment at maturity is necessary, only for the purpose of charging the indorser. The right of action against the maker is perfect without it.
But it is said that as the drawee of a bill of exchange, payable generally, may by special acceptance, payable at a particular place, make a demand at that place sufficient to bind the drawer, so, on the same principle, the accommodation indorser of a promissory note, payable generally, may be bound by a place of payment specially designated.by the maker, before negotiation. The analogy between the position of the parties to a bill of exchange, and the •corresponding parties to a promissory note, is not complete until ithe acceptance of the bill. The drawing of the bill must precede its acceptance; whilst the contract of indorsement *is jdosterior to the making of the note, and is made with reference to its 'terms already expressed on its face.
The right to make such alteration in, or addition to, the terms ■ of a note after indorsement, if conceded to the maker, might certfainly be so exercised as greatly to prejudice the indorser. If made payable at a distant point, without his knowledge, he might •ffind himself made liable by notice of dishonor, received days or •weeks after he had every reason to suppose the risk terminated. ,He might be willing to become surety for the prompt payment of ¡a note by the maker, provided his attention would be called to the ■.subject by a personal demand at maturity, but be unwilling to risk ¡its dishonor without such demand. At all events, he had a right to make his own contract, and insist on its terms. It was not com■petent for other interested parties, by á subsequent alteration of ■this written evidence, to vary his obligations without his consent, .although it may not appear that the change was in fact prejudicial •to him.
The decision of the Supreme Court of New York, in the case of Bank of America v. Woodworth, 18 Johns. 315, and the opinion of 'Chancellor Kent, in the same case, in the court of errors, 19 Johns. *363 391, seem to be strongly relied on by counsel for tbe plaintiffs. That was the case of a memorandum, made upon the margin of a note, designating the place of payment, which, it was held by the Supreme Court (Spencer, C. 3\), did not form any part of the contract, and therefore did not discharge the accommodation indorser, though made without his knowledge. But in the coui't of errors, it was held otherwise, as well upon principle as upon a review of the authorities, notwithstanding the able opinion of Chancellor Kent to the contrary; and this decision, made in 1821, has ever since remained the law of that state. We think it rests upon principles which can not be successfully controverted.
As to the unauthorized character of the alteration in this case, it may be sufficient to say, that it is admitted to have been made without the knowledge or -express consent *of the defendant, and as the note, when indorsed, was without blanks, full and perfect in all its parts, there is nothing apparent from which such consent can be inferred or presumed. The conditions upon which his liability depended, were material and important elements of his contract, and an unauthorized alteration, by which those conditions would be substantially modified, must operate to discharge him. And the fact that the plaintiffs would not, as their counsel claim, have consented to discount the note, without the alteration, only demonstrates more clearly the impropriety of subjecting the rights and obligations of a party, under his contract, to such modification as the convenience or interest of others may dictate.

Judgment of the district court affirmed.

Brinkerhoff, C. J., and Sutliff, Peck, and G-holson, JJ., concurred.