Freeman, J.,
delivered the opinion of the Court.
This suit is brought to recover the amount of a note made by "William S. Lundy, dated- February the 17th, 1862, payable six months after date, to the order of the defendant, at the Branch of the Union Bank *634 of Tennessee at Memphis, and endorsed by said defendant. Said note was for the sum of fifteen thousand two hundred and twenty-one dollars, (f 15,221.) At the time the note fell due, August 17th and 20th, the City of Memphis was in Federal occupation, the maker, Lundy, resided in Shelby county, Tennessee, twelve miles from Memphis, and the endorser in Mississippi, some few miles from the maker — no demand was made for payment, nor notice given to the endorser of failure to pay. This is excused in the declaration by the following alleged facts: First, That a War existed between the “United States” and the “Confederate States” at the making of the note, and the plaintiff and defendant were at that time citizens resident within the lines of the Confederacy; that when the note fell due, Memphis, the place of payment, had been occupied, to-wit: on the 6th of June, 1862, by the military forces of the United States, and so continued permanently occupied until the close of the war• and that by law and military orders, all intercourse between the residents of Memphis and persons outside the military lines was interdicted. Second, That at the maturity of the note, the Branch of the Union Bank was removed from the City of Memphis, and had ceased to do business in the' City; and that the maker and endorser of the note lived outside the military lines of the occupying forces, and within the lines of the military forces of the Confederate States. This state of things, it is averred, continued until the — day of 1865, when within a reasonable time after their removal, the note was presented to Lundy, the maker, *635 and payment refused; of which the endorser had due and legal notice.
There are other counts in the declaration, based upon the ground that the acts stated above, excused the want of demand of payment, and' notice of failure to-the endorser — and that therefore the endorser was liable without notice.
The first question we notice in the discussion of the case is, What was the effect of the assumed closing of the. Bank, and the removal of its assets South,, on the duties of the holder of the paper, and What were the rights of the accommodation endorser, Bynum, as to the demand of payment at the place designated in the contract; in other words, Did the state of facts shown, in the record excuse the holder of the paper from a compliance with the general rule of law, requiring a demand of payment at the place Avhere the note was made payable?
The facts, as shown by the testimony of F. W. Smith, Cashier of .the Branch of the Union Bank, are as follows: On the approach of the Federal forces to the City, the assets of the Bank were removed South, within the Confederate lines. This-was about the first of June, we assume, as Memphis was occupied by the army the 6th of that month. The Cashier went South with the assets, but returned in the early part of August, 1862, and the Bank was-kept open until February, 1864. He says, that while the Bank was not kept open during this period for general banking business, the assets all being in the-South; yet he and one of the tellers kept the house- *636 open, and received special deposits for the accommodation of parties, and put them in the Bank safe. They also attended to settling up the old business of the Bank as far as they could. To use the language of the witness — “the Bank was kept open, but the usual and general business of a Bank was not transacted; we answered inquiries, received special deposits, and settled any old business of the Bank, when we could do so.'” While this state of things lasted, Mr. Smith says — “if parties whose commercial paper was payable at our Bank had wished it, we would have received and kept their funds to pay off their paper when it fell due.” No such request, however, seems to have been made; therefore, no such transaction took place. The Bank resumed and carried on the usual banking business in February, 1864, and continued until the 1st of March, 1865, when it went into liquidation— suspending all business as a Bank. Do these facts make such a case as excused the demand for the payment of the note at the Bank when it fell due the 17th and 20th of August, 1862? In the examination of this question, we waive for the present the effect of the assumed enemy relation claimed to have existed between the holder and the maker of the note, as well as the endorser. We think the simple facts presented, the other question out of the way, would furnish no excuse for want of demand of payment at the time the note fell due, and at the place where contracted to be paid. The general rule needs no discussion, that it was the duty of the party holding the paper to make demand, or, what is equivalent, have the note *637 in the Bank at the date of its maturity. Edwards on Bills, 496, 497. It is true that if demand at the place designated in the contract became impossible, as if the Bank had ceased to exist, then demand at the place is excused, as in the case of Roberts v. Mason, 1 Alabama, 374, where the note was payable “at the office of discount and deposit of the Bank of the United States at Mobile;” but before its maturity,, this office was sold and disposed of to the Bank of Mobile, the office thus ceasing to have an existence. It was held in this case that demand at the place had thus become impossible, and the holder recovered against the endorser without. such demand. Demand in this case, however, had been made at the Branch of the Bank of the State of Alabama at Mobile, to which Bank the office of discount had been transferred, and which had been made agent for the purpose of settling the affairs of the office of discount. This was held to be an act of supererrogation, and ineffectual for any purpose. But no such case as this is found in the facts before us. The Bank was open at the day the note fell due, its Cashier present to answer inquiries — in a word — the Bank was in existence, and was not transferred or sold to third parties; and whether in condition todo a general banking business or not, or whether its assets were in its vaults, or in some other place however distant, could make no difference to the holder of the paper; nor in any way change the duties imposed upon him by the terms of his contract under the law. It is the existence, or non-existence, of the Bank, as a place of payment, that excuses the want of demand *638 at that place; and not the state of its assets, nor their location, nor the amount or character of its business. These were things not in anyway involved in the contract of the parties. The terms of this contract, fairly interpreted, meant this and no more; for by making the note payable at the Bank, it was fairly contemplated by the parties that the payment should be made at the Bank, as an Institution; and if no such Bank then existed, it could not be pretended that it was understood, or would have been assented to if suggested, that the liability of the parties should cease. But having so contracted, and the law fixing the meaning of such a contract, with the duties and the liabilities- of the holder as well as those of the maker and the endorser growing out of it, these duties and liabilities could not be changed, except by becoming impossible of performance by reasonable and active diligence on the part of the holder of the paper, or by the consent of the parties to be affected by their non-performance. We see nothing in the facts above stated that would warrant us in holding, that the holder of the paper was •excused from demanding payment at the Bank on the day the note fell due.
Still waiving the question of the effect of the as-mmed enemy relation upon the duties and rights of the parties to the paper, we will examine the question, Whether the notice actually given of the demand of the maker personally was sufficient to charge the endorser; i. e., Whether a demand on the maker in person at his residence, and notice of the fact, if given in proper time, was effectual for this purpose, and showed to the *639 endorser, that the paper had been dishonored in accordance with the terms and legal effect of his contract? Assuming, without holding or deciding for the present, that the enemy relation excused demand of payment until the cessation of the war, then what were the duties of the holder of the paper? While it is settled, that the breaking out of a war, — between the country of the holder and that of the parties liable to pay on a note or bill, thus suspending commercial intercourse and interdicting all friendly relations between citizens of the respective belligerent countries,— is a sufficient excuse for failure to give notice of the dishonor . of the paper when it falls due; it is equally well settled, that on the removal of the impediment, the holder must give notice of the dishonor within a reasonable time. Hopkirk, v. Page, 2 Brock, 34; Edwards on Bills, 435. This being the duty of the holder, Was the notice given such as the law requires to fix the liability of the accommodation endorser?
The requirements of a proper notice to fix the liability of parties entitled to it, are thus given in Edwards on Bills, 445: “ The notice need not be in writing, and no particular form of words is necessary to be used, but the language employed must be such as to convey notice to the drawer that the bill, or note, has been dishonored; and to do this, it is essential that the notice should describe the bill, and show in express terms, or in words that necessarily convey information to the party notified, that acceptance or payment has been refused on due presentment. The rule requires positive and distinct notice of the *640 dishonor; that is to say, notice of the facts showing or fairly implying that the drawer has refused to accept or pay the bill when presented for that purpose, at the right time and place, or other acts done which are equivalent.”
The facts shown in this notice are of a personal demand on the maker of the note, and not of a demand made at the place stipulated on the face of the note. The endorser might well say, that his contract had not been met so as bind him, from the facts shown in the notice, which are, that on presentment at the place designated, and demand of payment there, it should be met by the holder, and on his failure, of which he should be duly notified, that he would make good the undertaking of the maker of the note. Nor-is there any intimation in the notice, or any fact shown outside of it, as brought to the notice of the endorser, of any act done by the holder which may be deemed’ an equivalent of such demand as was required by the contract of the parties. If the Bank had ceased to exist, so that demand there could not be made, then the statement of this fact would have shown the endorser a sufficient reason for failure to comply with the terms of the contract, and that his liability had been fixed without literal compliance, or rather would have shown a fact that would have excused the demand at such Bank. But no such fact is shown, nor really was there any purpose on the part of the holder to rest the liability on the existence of any such state of facts, as clearly appears from the face of the notice given. It shows clearly that *641 the purpose was to notify the endorser of a liability-incurred by reason of the simple fact of a demand on the maker personally. This being the ground relied on by the holder/ and of which he gives the endorser-notice, he can not complain if the endorser shall accept the statement he has made as the - true ground, and say, there is no notice of . the dishonor of the note according to the terms of his contract, and no-liability appears to him to be fixed from the facts of which he is notified; therefore he has no notice of' that which compels him to take steps to indemnify himself or to make good the engagement of the party for whom he has undertaken under stipulated conditions well defined by the terms of his contract and-the settled rules of law governing it. The party can not be allowed to. mislead the endorser by the facts stated in his notice. Edwards on Bills, 447.
We think it clear that no personal demand of the maker can in anyway fix a liability on the endorser-of the paper sued upon. This would be, not to enforce the contract of the parties, but to make- another for them contrary to the one they have agreed upon, and that too-of facts arising subsequent to their agreement, and not superinduced by any overriding necessity. The principle, that makes the impossibility of a literal performance-of the conditions of a contract an excuse for failure, can not be held to apply so as to make another and a different act, substituted for it, serve same the purpose. The-parties may well insist upon the terms of their contract being complied with, or in case this- is excused by facts rendering a literal compliance impossible, then that *642 notice of these facts stand as an equivalent to compliance, and as a legal reason why they are liable to perform the engagement - entered into. Notice of demand on the maker in this case is not of an excuse for failure to make demand at the place required by the contract, but is notice of another act, not stipulated for, and upon which the holder proposes to raise a liability. We hold that this can not be done, and that therefore the notice in' this case must go for nothing toward fixing the liability of the endorser; — so that the case stands as if no such notice had been given. Notice being required as we have laid down, (assuming the enemy relation to have existed for the sake of the argument), within a reasonable time after the cessation of hostilities, such notice must contain a statement of the facts showing the dishonor of the paper as indicated in this opinion. This notice does not show such facts; nor a state of facts from which the liability of the endorser can arise, and is therefore not sufficient.
The case of the Union Bank v. Fowlkes et als., 2 Sneed, 557, 558, we think, sustains the views above given. That was a case of notice by a notarial protest of a foreign bill, where all the facts, necessary by the rules of law to charge the endorser, are required to be shown in the protest. There can be no substantial difference in principle in such a case, between the facts necessary to be shown on the trial to fix' the liability of the endorser, and a ease like, the present on a promissory note. In the language of Judge Caruthers in the above case: “The diligence required constitutes an *643 essential ingredient in tbe excuse for failure to make actual demand, and must be shown in the protest in -case of foreign bills. It is otherwise, — as to the mode of proof only, — in cases of inland bills and promissory notes. In these, extrinsic evidence is allowed.” Gardner v. Bank of Tennessee, 1 Swan, 420.
It is a settled rule of commercial law and usage, that if a drawer of a note or acceptor of a bill, having a regular place of business, is absent from his place of business, or has absconded before the' day of payment, or if his house be closed, notice of such fact is equivalent to notice of the demand and dishonor of the paper. Lehman v. Jones, Redf. & Bigelow’s Leading Cases on Bills and Notes, 451. The rule is thus stated by the Supreme Court of New York, in Taylor v. Snyder, 3 Denio, 151: “ "Where the maker has absconded, that will ordinarily excuse a demand, that is of him personally, and notice of the fact is sufficient to hold the endorser.”
We therefore hold that the notice is not sufficient to charge the endorser, it being only of a demand on the maker personally, and not in accordance with the terms of the contract of such endorser. There is not in this record any evidence of a proper demand;— nor notice of any fact excusing such demand, or the equivalent for it.
This disposes of the chief question in the case. The two last counts proceed on the ground — the one, that the removal of the Bank assets, the closing of the Bank in 1861, and the existence of the War, made it impossible to make demand at the maturity 4f the note; *644 the other, on the ground that the existence of the War alone rendered it impossible to make demand at maturity, and give notice of non-payment. No notice of any kind is averred in these counts, nor any excuse given for want of such notice. Holding, as we do, that these facts do not excuse n'etice of the dishonor of the paper when the impediment is removed, or of the facts excusing demand according to the terms of the-contract, We need not further consider these questions..
On a former trial of this case on appeal, reported in 5 Col., 341, the opinion, reversing the case, holds the-law different from that we have laid down, but we can not and will not assent to the view there expressed.
The doctrine of a former adjudication can have no-application to this case, as it was a simple reversal of the judgment of the court below, for reasons therein stated; but no judgment was given for the one party or the other, except that of reversal, and what the law fixed as a consequence, the costs of this Court. The judgment of reversal is conclusive that the case was reversed, but of nothing more. Under this judgment the case was sent back for a new trial, but on that trial . a new case might have been made, new evidence introduced, and entirely different questions presented. We are no more bound by that opinion of the Court, as to the law laid down, than in any other ease, between other and different parties. The rule in a Chancery case would be different, where the decree made could settle the rights of the parties upon the facts of the record.
Keverse the judgment.