The opinion of the Court was delivered by
Tilghman C. J.
If the plaintiff had proved, that Adams had absconded, and was not to be found when the note fell due, a demand of payment would have been dispensed with, because it would have been impossible to make it. But no such thing was proved, and therefore, a demand was necessary. The notes being dated at Baltimore, would raise a presumption, that Baltimore was the drawer’s place of residence, as was decided by the Supreme Court of New Fork, 2 Caines’ Rep. 127. Baltimore then, was the place at which enquiry should have been made. The Court laid down the law fairly. A demand, or at least due diligence in endeavouring to make a demand, was necessary.
2. Why was it incumbent on Findley, to shew where the drawer was to be found ? It does not appear that the plaintiff ever applied to him for that purpose, or even informed him of the non-payment of the note. Under these circumstances, Findley was in no default, but the plaintiff was in default, in *482 not giving notice of non-payment, and therefore he was not entitled to recover in this action.
But there is another error assigned. After the plaintiff had concluded his evidence, the defendant’s counsel, who rested the cause on the plaintiff's evidence, began their address to the jury. During this address, the plaintiff’s counsel, asked leave of the Court, to offer further evidence. When this motion was made, the defendant’s witnesses were Called, and did not answer, but during the argument on the motion, they all appeared except one. The Court rejected the evidence. When the jury came to the bar, to give their verdict, the plaintiff proved, that the witnesses of the defendant, who had not answered, had been seen in the courthouse, between three and four o’clock that afternoon.
The time and manner of examining witnesses, is a matter very much in the direction of the Court. It is not regular to introduce evidence, after the counsel have begun their address to the jury, although, where circumstances render it proper, the Court may permit it. No particular reason for breaking through the general rule, appears in this instance; no new witness arrived, who had been subpoenaed, and failed to appear before the evidence was closed. The plaintiff’s witnesses, for all that appears, were all on the spot when his counsel declared, that they had closed their evidence. To make a general practice of introducing new evidence, when from the argument of the adversary, it is found where the shoe pinches, might lead to perjury, and at all events, it would be productive of confusion in trials. But there was a particular reason against it in this case. The defendant had discharged his witnesses, and one of them was not to be found. Had the evidence been admitted, he might have complained of being taken by surprise. As for the proof, when the jury were about to give their verdict, that the absent witness had been seen in the course of the afternoon, it was of no consequence, because it was not proved, that the defendant knew of his being in Court. I cannot say therefore, that the Court acted with too great rigour, when they rejected the evidence. Whether this Court will reverse for error, on a point in which the law permits the Court below to exercise their discretion, is a question, which it is unnecessary to decide, as it does not appear that there has been any abuse of discretion. I have gone through the exceptions *483 relied on by the counsel for the plaintiff; in my opinion* they have not been supported, and therefore, the judgment should be affirmed.
Judgment affirmed. .