BENJAMIN McCOURRY *against* THOMAS C. DOREMUS and JAMES SUYDAM.

### IN ERROR.

If the charter of a corporation provides that all shares of its capital stock shall be transferable on the books of the company, in such manner as the by-laws shall ordain, no legal transfer can be made until it provides books, and ordains by-laws for the transfer of its stock; and until then no legal demand on a person to transfer shares can be made.

Proof of placing in the post office, a letter containing a notice of trial, directed to the defendants' attorney, residing in a post town, in due season to be received, the legal period prior to the day of trial, will, if made in the presence of the defendants' attorney, and until repelled, raise a presumption, and stand for proof of the service of notice.

But this presumption may be repelled by the affidavit of the attorney to whom the notice was directed, stating that it was not received.

The refusal of a court to continue a cause after it is at issue, is not a matter upon which error can be assigned.

In making return* to a writ of error, the schedule should contain simply a transcript of the record from the book of judgments.

---

*Frelinghuysen,* for plaintiff in error.

*W. Chetwood,* for defendants in error.

EWING, C. J. The questions in this cause come before us, on bills of exceptions, taken upon the trial in the court of Common Pleas of the county of Morris.

---

*NOTE.—See the form of a return to a writ of error, from the Court of Common Pleas. *Tidd's Appendix* 355. *Sec.* 22. *Archbold's Forms* 227. 10 *Went. Plead.* 361.

McCourry *v.* Suydam.

One of the bills exhibits the following case: Doremus and Suydam placed in the hands of McCourry $300, for the purpose of subscription to the stock of the Morris Canal and Banking Company; for which he gave a receipt in these words: "Received, New York, April 26, 1825, of Doremus and Suydam, three hundred dollars, to be used by me in subscribing to the capital stock of the Morris Canal and Banking Company, the subscription to be in my name and for their benefit." McCourry subscribed for 30 shares, and paid the first instalment thereon of 10 per cent., or $300. The subscription to the stock was made on the 26th of April, 1825. The directors were chosen on Saturday, the 4th of June, 1825, and their first meeting was held on Tuesday, the 7th day of that month. On Monday, the 6th of June, Doremus and Suydam demanded of McCourry, at Morristown, a transfer of the shares, which he refused. Evidence was given that on the 6th and 7th of June, sales could have been made in the New York market at eight per cent. advance. The premium sunk before the end of the month to 2 1-2 per cent. On the 2d of July, sales were made at par; after which, the price underwent a continued and considerable depreciation. One of the witnesses, who was one of the commissioners to receive subscriptions, testified that "he did not conceive a proper transfer could be made until the transfer book was made;" that before the election of directors he "transferred some shares, but done confidentially, and did not make the transfer until there was a transfer book for that purpose, which was 2, 3, 5 or 7 weeks after." Another witness, a stock broker of the city of New York, testified to a number of sales between the 26th of April and the 25th of May, and said, "the transfers were made by means of a certificate with a power of attorney attached, and by purchasers that was deemed satisfactory; a certificate, with a power of attorney attached, is considered by purchasers a satisfactory evidence of a title, and upon that certificate and power being delivered, they

McCourry *v.* Suydam.

pay the amount in money." The defendant called on the court to charge the jury that the demand of stock, proved to have been made, was not a legal and sufficient demand to support the plaintiff's action. But the court refused, and charged the jury that the demand was legal and sufficient, to which the defendant excepted. A verdict was rendered for the plaintiffs for $450. The precise time at which the action was commenced does not appear, but it was soon after the demand, and prior to the 28th of the same month.

The question presented for our consideration is, whether the charge of the court was legal and correct.

The receipt delivered by the defendant to the plaintiffs contains no stipulation or agreement respecting a transfer of the shares, nor concerning the time when it should be made or might be required; nor does it appear by the evidence that any agreement on this head was entered into by the parties. Hence the demand became a material subject of consideration. No right of action could exist until a legal demand was made, until a demand was made at such time and under such circumstances as that the defendant was not only bound, but able in law and fact to make the transfer. By the 10th section of the act incorporating the Morris Canal and Banking Company, it is enacted, " that all shares of the capital stock at any time owned by any stockholder shall be transferable on the books of the company in such manner as the by-laws shall ordain." Now, until the company had books and until by-laws had ordained the manner in which shares should be transferred, no legal transfer could be made, and consequently no legal demand on the defendant to transfer the shares in question. But the demand, on which, if at all, the action of the plaintiffs must be sustained, for no subsequent demand was alleged or proved, was made on the 6th of June, prior to any, even the first, meeting of the directors, and therefore necessarily prior to any regulations or by-laws. On the 6th of June, then, the defendant could not make a transfer, and a demand at that time must therefore be nugatory and inoperative.

The practice of the New York stock market, as testified by one of the witnesses, can have no weight on this question. We are to seek what was required by the grave and steady rule of law, not what would satisfy the eagerness of speculation, grasping its object on one hand with bold temerity and parting from it on the other with suspicious haste. A mournful history tells us there were at that time in the stock market many practices which neither the law nor good morals could uphold.

The charge of the court was in my opinion incorrect.

Upon another bill of exceptions, error is assigned in the order of the court for the bringing on of the trial of the cause. When it was called from the paper of causes furnished by the clerk, the defendant's attorney objected to the trial because notice had not been given. An affidavit of the plaintiffs' attorney was read that he had put into the post office at Newton, in Sussex county, a letter containing a notice of trial, addressed to the attorney of the defendant at Morristown, the place of his residence. Also an affidavit of the postmaster at the latter place that a single letter was received at his office, post marked at Newton on the 3d of April, 1826, postage unpaid, but to whom addressed he did not know, nor did he state to whom it was delivered, nor how it was disposed of. An affidavit of the attorney of the defendant was then read that he had not received the letter nor any notice of trial in the cause. The court ordered the trial to come on.

In making this order the court erred. The plaintiffs were not entitled to bring on the trial. Proof of placing in the post office a letter containing a notice of trial, directed to the defendant's attorney residing in a post town, in due season to be received the legal period prior to the day of trial would, if made in the presence of the defendant's attorney, and until repelled, raise a presumption and stand for proof of the service of notice. The affidavit of the defendant's attorney that he had not received the notice,

entirely destroyed the presumption and left the plaintiffs without any proof of service. Putting a letter into the post office is not, in itself, service. It only raises a presumption of service which is neutralized and destroyed by another, to the contrary, of equal weight; and such other is found in the affidavit of the defendant's attorney. The plaintiff in transmitting his notice by mail, takes on himself the entire risk of delay or miscarriage, and cannot require the defendant to bear the slightest portion of it. *Qui sentit commodum sentire debet et onus.*

I have examined the contents of this bill of exceptions, and the sufficiency of the proof of notice, because I have thought it important the opinion of the court on this topic should be expressed, as well to guide us at the circuits as to furnish a rule to the Courts of Common Pleas, who may believe our opinions to be correct. To avoid misunderstanding, however, it is proper to add that while I admit there are strong points in the argument of the plaintiff's counsel, and hold in great respect the opinion and reasoning of the venerable *Chief Justice Tilghman,* as reported in 4 *Serg. & Rawle* 480, I consider it to be well and long settled that the error of the court below, as exhibited in this bill of exceptions, is not a ground for reversal upon a writ of error. Without entering into a full and argumentative discussion of the subject, I shall content myself with stating the doctrine as I find it laid down by the Supreme Court of the United States in the case of *Wright* against the lessee of *Hollingsworth,* determined at the last term of that court. 1 *Peters* 168. "The allowance or refusal of amendments in the pleadings; the granting or refusing of new trials; and, indeed, most other incidental orders made in the progress of a cause before trial, are matters so peculiarly addressed to the sound discretion of the courts of original jurisdiction, as to be fit for their decision only, under their own rules and modes of practice. This, it is true, may occasionally lead to particular hardships, but on the other hand, the general inconveni-

ence of this court attempting to revise and correct all the intermediate proceedings, in suits between their commencement and final judgment, would be intolerable. This court has always declined interfering in such cases; accordingly it was held by the court in *Wood* v. *Young*, 4 *Cranch*, 237, that *the refusal of the court below to continue a cause, after it is at issue is not a matter upon which error can be assigned:* that the refusal of the court below to grant a new trial, is not matter for which a writ of error lies, 5 *Cranch* 11 and 187, and 4 *Wheat.* 220; and that the refusal of the court below to allow a plea to be amended, or a new plea to be filed, or to grant a new trial, or *to continue a cause*, cannot be assigned as a cause of reversal on a writ of error."

This case affords us an occasion to notice, and we use it under an hope it may be profitable, the laxity which prevails in some of our proceedings, a laxity which loudly calls for correction, which is beginning to develop its mischiefs, the extent and number of which may justly excite fearful anticipations. Thus in the record of the judgment before us, the entry of the verdict is, "that the said Benjamin McCourry did assume and undertake in manner and form, &c., and they assess the damages of the said Thomas C. Doremus and James Suydam as aforesaid, sustained by reason of the premises aforesaid," at four hundred and fifty dollars besides costs; that is to say, the damages sustained by reason of the promise and undertaking of the defendant, not by reason of his non-performance thereof. Again: The costs of increase are not inserted, but a blank space left, and of course, the *in toto attingunt* clause contains no sum, but a blank where the sum should be found. Again: In making return to the writ of error, the schedule, instead of containing simply a transcript of the record from the book of judgments, is in the ordinary form of an exemplification, and then follow, a copy of the entry usually made on the minutes of the court directing due return to be made to the writ; and a formal certificate of the clerk that the entry is truly copied; and a

second time, the seal of the court is affixed. The latter copy, which ought never to be sent, is probably designed as a substitute for a proper return by the court; the return in this case having the signature of the clerk, instead of one or more of the judges. Having mentioned these matters it may not be amiss to observe that they have no influence on the reversal of the judgment.

Judgment reversed.

FORD, concurred.

DRAKE, J. did not sit in this cause, having been concerned as counsel of one of the parties.