## Oxnard *versus* Varnum.

1. The making and dating of a promissory note at a particular place is not equivalent to making it payable there, nor does it supersede the necessity for presentment and demand at the residence or place of business of the maker if it be known, or if by due diligence in making inquiry it could be ascertained.

2. Whether or not due diligence is used in making inquiry for the resi-

1 Amerman—13

dence or place of business of the maker or indorser, is in most cases a mixed question of law and fact; the court must state the law to the jury according to the circumstances as they appear, but the jury must determine the fact.

3. A promise to pay, by the indorser, after default of payment by the maker not only dispenses with proof of presentment and notice, but throws on the defendant the·burden of proving laches of the holder, and that the defendant was ignorant of the facts at the making of the promise.

4. Lightner *v.* Will, 2 W. & S. 140, and Loose *v.* Loose, 12 Casey 38, followed.

November 4th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1 of *Allegheny county:* Of October and November Term, 1885, No. 133.

Assumpsit, brought by William Varnum against A. W. Oxnard upon a promissory note drawn by Geo. W. Scranage to the order of A. W. Oxnard, and by him indorsed to G. W. DeCamp, who in turn indorsed it to the plaintiff, William Varnum. Declaration by second indorsee against first indorser. Pleas: 1. No presentment. 2. By the law of the place where the contract was made and was to be performed the defendant cannot be pursued until the remedies against the maker are exhausted. 3. Payment with leave, &c., and notice that fraud and failure of consideration would be shown, with proof that plaintiff was not a bona fide holder for value.

On the trial of the case, before COLLIER, J., the following facts appeared:

Early in September, 1883, Geo. W. Scranage agreed to purchase from Geo. W. DeCamp certain titles or claims to land in West Virginia. As part of the consideration for this purchase Scranage gave DeCamp a six months' note for $2,000, with an indorser, of which the following is a copy:

*Pittsburgh,* September 8th, 1883.

Six months after date I promise to pay to the order of A. W. Oxnard two thousand dollars, without defalcation, value received. GEO. W. SCRANAGE.

Indorsed—Pay to the order of G. W. DeCamp.

A. W. OXNARD.

Pay to the order of William Varnum.

G. W. DeCAMP.

At the trial Varnum testified that he purchased the note of DeCamp at Erie, before its maturity, and for value.

On cross-examination he said DeCamp informed him when he took the note that the maker lived in West Virginia, his

recollection being Wheeling was named as the latter's residence. He sent the note to a Pittsburgh bank for collection, without giving any information or instructions as to presentment or demand. On the day of its maturity it was handed to a notary, who inquired for the maker at several Pittsburgh banks and then protested it. At the date of maturity Scranage was not in Wheeling. No actual presentment of the note was ever made.

The notary mailed all the notices of protest to his principal, the plaintiff, at Erie, and the latter, some days later, mailed the notice for defendant back to Pittsburgh. Defendant's residence was New Martinsville, West Virginia, and he had no place of business or post office address at Pittsburgh. The notice came to his hands some weeks after the protest, together with a note requesting him to call at the office of Mr. Hughey, to whom the note had been sent for collection. He called and had an interview with Mr. Hughey, who testified at the trial that defendant promised to pay the note if he would forbear to sue for a time specified. Defendant contradicts this, and also testifies that when the conversation took place he was not aware of the non-presentment of the note. There was some evidence to show that Scranage's residence and place of business at the time of making the note was at Wheeling, West Virginia.

The defendant made the following offer: "Defendant's counsel proposes to prove by the witness on the stand that he is a practicing attorney in the state of West Virginia, and an expert in the laws of that state; that the note in suit was given in consummation of a negotiation which had been carried on in West Virginia, and which related exclusively to property there situated, and things there to be done; that none of the parties resided in Pennsylvania; that both the maker and indorser of the note resided in West Virginia, and were known by Mr. DeCamp, the other party to the negotiation, to be residents of that state; and that the parties met in Pittsburgh, merely for convenience, by appointment of Mr. DeCamp, and after an appointment had been made to meet in Wheeling to exchange the papers, including the note in suit. This for the purpose of showing that the said note and the indorsement thereof are West Virginia contracts, to be governed by the law of that state, to be followed by evidence that the note was non-negotiable by the law of West Virginia, and that by the same law the holder of such a note has no action against the indorser without showing that he has exhausted his remedies against the makers of the note or showing that the maker of the note is insolvent."

" Objected to by plaintiff's counsel, first, because they have

not shown any knowledge on the part of Varnum of these facts, and second, because Varnum is the bona fide holder of this note before maturity for value without notice, and that the offer as a whole and in its parts is incompetent and irrelevant." Objection sustained and bill sealed for defendant. (Seventh assignment of error.)

The defendant requested the court to charge inter alia.

" Second. The plaintiff having been informed when he purchased the note that the maker thereof lived in West Virginia, his sending it to Pittsburgh (where Scranage had no residence or place of business), and causing demand or inquiry to be made at sundry banks in that city, was not the diligent endeavor to obtain payment from the maker which the law requires the holder to make in order to render the indorser liable."

" Fifth. It is the duty of the holder of a note to use due diligence to ascertain the maker's residence, and inform the notary or agent charged with the presentment of the note, where presentment and demand should be made."

Answer. " The foregoing points, in so far as they are affirmed in the general charge, are affirmed, and in so far as they are denied in the general charge they are refused." (First and third assignments of error.)

The court charged the jury as follows: This is an action on a promissory note. It has been read in evidence to you, and is in these words:

*Pittsburgh,* September 8th, 1883.

Six months after date I promise to pay to the order of A. W. Oxnard two thousand dollars without defalcation, value received. GEORGE SCRANAGE.

This note, according to the evidence, was made in Pittsburgh. Some time before its maturity the plaintiff, who is the last indorser, bought it and paid money or its equivalent therefor in full. His testimony, and I believe it is undisputed, is, that he bought it of Mr. DeCamp, one of the indorsers, and paid him in money and in exchange notes or property its full value, less the interest.

When the note became due the drawer, Scranage, no matter where he lived, was bound to pay it if he were able, and could be made to pay it; and so each indorser, if properly protested, is liable. The plaintiff cannot bring an action against them all in one suit, but he can bring an action against the drawer and each of the indorsers separately, and when he makes his money off one the party who has to pay, if he be not the drawer, has recourse again.

Now, gentlemen, if the protest was properly made the

[Oxnard v. Varnum.]

plaintiff would be entitled to recover. The note being made at Pittsburgh, the plaintiff had a right to send it to Pittsburgh for collection.

[The first question, and it is a question of fact for you, is, was this note properly protested so as to charge A. W. Oxnard,] to whose order the note is drawn, with the payment thereof? And that will depend upon how you may find the evidence.

The evidence, as I understand it, is, that Mr. Varnum, the plaintiff, did not state to the bank that Mr. Scranage lived in Wheeling, and the notary got the note without knowledge of that fact; he made inquiry, as he says, at a number of banks and business houses, and also examined the city directory, but of course could not find Mr. Scranage because Mr. Scranage was not here. According to the testimony of Col. Arnett he must have been, at the time the note fell due, in Greenbrier county, and not even at his regular residence in Wheeling. Of course the notary would not find him, but he says he made. this search for him; that he then returned that he had made diligent search, and immediately mailed the notice of protest to Mr. Varnum, the owner of and last indorser on the note. Mr. Varnum alleges that understanding that Mr. Oxnard lived in Pittsburgh he, by the next mail, sent the notice to Mr. Oxnard at Pittsburgh. Mr. Oxnard a few days after that came to Pittsburgh, received the notice, and, it is alleged by the plaintiff, he then promised to pay the note. That is disputed by the learned counsel for the defendant, and that is a question of fact for you to determine.

If you believe that the notices of protest were sent to Mr. Varnum, and then a notice was sent to Pittsburgh, and Mr. Oxnard actually received it and promised to pay the note, he is properly charged. If he did not make any such promise, and if the notice was not sent in a reasonable time, under the circumstances, of course he could not be charged.

There must be also due diligence exercised to make a demand upon the drawer of the note. I have stated to you that [he was not obliged to send the note to West Virginia, but the notary was bound to use due diligence here because the note was dated at Pittsburgh,] and you will say whether the exertions he made to make a demand upon the drawer were reasonable and proper under the circumstances. He did not find him and could not make a demand.

Those are the only two questions in the case, and I will state them again; first, the note being made at Pittsburgh it was not necessary to send it to West Virginia for collection; and second, [if due diligence was exercised here by the notary Mr. Varnum was not obliged to leave notice at the bank that

[Oxnard *v.* Varnum.]

Scranage lived in West Virginia.  It is for you to say, under the evidence you have heard, whether there was due diligence exercised.]  So as to the indorser, a notice of protest must be sent to him in the usual and ordinary way, within a reasonable time.  If he lives in the city it ought to be sent to his place of business or residence.  If he lives away, it ought to be sent to his address.  In this case, if the testimony of the plaintiff is to be believed, he thought the defendant lived in Pittsburgh and sent it to him here; the defendant actually got the notice a few days afterwards, and then, [the plaintiff alleges, he made a promise to pay the note.  If you believe that, that would charge him;] if you do not believe it, it would not.

Verdict for the plaintiff for the sum of $2,110 and judgment thereon; whereupon the defendant took this writ, assigning for error the rejection of his evidence as above set out, the answer to the defendant's second and fifth points, and that part of the charge inclosed in brackets.

*W. Macrum,* for the plaintiff in error.—1.  The utmost effect that can be given to the place of date is that in the absence of all knowledge of the maker's residence it is proper for the holder to inquire there for information, and his doing so is perhaps some evidence of diligence to ascertain it, the presumption from the date being merely a natural not a legal presumption: Browning *v.* Armstrong, 1 W. N. C. 347 ; Spies *v.* Gilmore, 1 Comst. 321 ; Orleans Bank *v.* Winslow, 12 Gray 469 ; Lightner *v.* Will, 2 W. & S. 140.

2.  Where the facts are undisputed the question of due diligence as to demand and notice is ·for the court:  Haley *v.* Brown, 5 Pa. St. 178 ; Smith *v.* Fisher, 24 Id. 222.

3.  If our first proposition is proved it results that Wheeling was the place where the contract was to be performed, besides being the place where it was in reality made.

In the recent case of Brown *v.* Camden and Atlantic Railroad Co., 34 Leg. Int. 58, the late C. J. SHARSWOOD says : " It is perfectly well settled by a host of authorities, which it would be an affectation of learning to quote, that it is the law of the place of performance by which the mode of fulfilling a contract, and the measure of liability for its breach, must be determined ": Whart. on Confl. § 401 ; Story on Confl. § 233 ; Allshouse *v.* Ramsay, 6 Whart. 331–4 ; Andrews *v.* Pond, 13 Peters 65 ; Van Zant *v.* Arnold, 31 Ga. 210.

The doctrine of this case as to a contract made by parties *in transitu* is laid down in 1 Danl. on Neg. Instr. § 876 ; Whart. Conf. L., §§ 398, 402 ; 2 Parsons, N. & B., 351.

Whether the proprietor of a bill or note is a bona fide holder

[Oxnard *v.* Varnam.]

is to be determined by the *lex loci contractus*, that is, the place. of payment: Daniel Neg. Instr. § 889, citing Allen *v.* Bratton, 47 Miss. 129; Woodruff *v.* Hill, 116 Mass. 310.

*Francis S. Bennett*, for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court, January 4th, 1886.

It is undoubtedly true, in general, that to hold the indorsers, a promissory note must at the proper time be presented and payment demanded; if the place of payment be specified, at that place, if not, then at the place where the maker resides, or at his usual and ordinary place of business, and notice of non-payment must be promptly given.

The note in suit was not payable at any particular place; it was made and dated at Pittsburgh, but the maker neither lived nor had any place of business there. There is some evidence to show that his residence and place of business at the time of the making of the note was at Wheeling, in the state of West Virginia, and of this fact De Camp and Varnum would both appear to have been informed, at the time of the transfer of the note by the former to the latter. Mr. Varnum testifies that he then inquired of De Camp as to the residence of the parties, and that De Camp said Oxnard lived in Pittsburgh and Scranage in West Virginia, and his impression was that he said in Wheeling. At the maturity of the note, however, it would appear that Scranage was in Greenbrier county, or in Kanawha county, in that state, looking after some matters connected with a purchase of lands he had made from De Camp, the payee of the note; but whether or not Wheeling continued to be his residence or place of business is not shown.

Under these circumstances the learned judge seems to have supposed that because the note was dated at Pittsburgh, the holder was not obliged to send it to Wheeling or elsewhere in West Virginia; that the holder or his notary was bound only to use due diligence at the place where the note was made. It is very well settled that the making and dating of a note at a particular place is not equivalent to making it payable there, nor does it supersede the necessity for presentment and demand at the residence or place of business of the maker in order to charge the indorsers; it may have the effect of leading the holder, who has no knowledge of the proper place for presentment, to suppose that he might be there found: Duncan *v.* McCullough, 4 S. & R. 480, and where no residence or place of business can be found, an inquiry at the place of the date of the note might perhaps be regarded as essential to the

[Oxnard *v.* Varnum.]

·exercise of due diligence. This subject was fully considered in Lightner *v.* Will, 2 W. & S. 140 ; the note, upon which suit was brought in that case, was dated at Pittsburgh, and no place of payment was specified, the question being upon the liability of the indorsers. The court said : "It has been argued, however, that dating the notes at Pittsburgh is equivalent to making them payable there, and that it was therefore unnecessary, in order to make the indorsers liable, to go beyond the precincts of the city of Pittsburgh to demand payment of the drawers. And indeed it would seem that a notion of this sort prevailed to a certain extent in the city of Pittsburgh, but certainly it is an erroneous one. The circumstance of the notes being dated at Pittsburgh might be considered, by those who knew nothing to the contrary, some indication that the drawers resided there ; but by no reasonable interpretation can it be regarded as being intended to make the notes payable there. The contrary, indeed, has been adjudged : Anderson *v.* Drake, 14 Johns. Rep. 114. It is prefixed or subjoined merely to show the place at which the note is drawn, in like manner and for the like purpose as it is done in writing a letter, but never done in either case with a view to show that the drawer of a note, or the writer of the letter, resides at the place ; it at most only goes to show that the drawer of the note, or the writer of the letter, was there at the time of drawing the note or writing the letter." In Parsons on Notes and Bills, 453, it is said : "Where the maker, at the time of signing the note, lives in another state from the one in which the note is dated and delivered, and in which the holder lives, a different question is presented. Where the party who receives a note under such circumstances knows when he takes it where the maker lives, and has sufficient time before its maturity within which to cause a proper demand to be made upon the maker, it would seem to follow that he should be considered as taking the risk of a proper presentment in the state where the promisor resides." We may also refer to Spies *v.* Gilmore, 1 Comstock, 321, and to Taylor *v.* Snyder, 3 Denio, 151, where the same doctrine is declared. This statement of the law, it is true, has not been universally adopted, perhaps, but it would appear to be the view generally accepted ; it is certainly in accord with the peculiar nature of the contract of indorsement, and is, we think, in harmony with the commercial usages of the country.

Whether or not due diligence is used in making inquiry for the residence or place of business of the maker or indorser is, in most cases, a mixed question of law and fact ; the court must state the law to the jury, according to the circumstances as they appear, but the jury must determine the fact : Stuck-

ert *v.* Anderson, 3 Whart. 116. What will constitute due diligence to find either will in each case necessarily depend upon its peculiar facts ; no fixed rule can be prescribed which will apply under all circumstances, but the fact that the note is dated at a particular place is doubtless proper to be considered in the determination of that question.

In the case at bar, however, Varnum, the holder, knew that the residence or place of business of Scranage, the maker, was not in Pittsburgh, although the note was made and dated there, he knew, for De Camp told him that Scranage lived in West Virginia, and he says himself that he is under the impression that De Camp told him, that he lived in the city of Wheeling. If Scranage had resided in Pittsburgh when the note was given, and had afterwards removed from the state, a different question would be presented, but as his residence in Wheeling was known to De Camp at the time the note was made, and to Varnum, when by the indorsement of De Camp it was transferred to him, they must, in each case, be supposed to have taken the risk of a proper presentment at the place where the promisor resided. A person who takes a promissory note by indorsement, if he proposes to hold the indorser, takes it with the knowledge that at its maturity a proper demand must be made upon the maker for payment, and he is under obligations, at the time he receives it, or in due time afterwards, to know, or at least to inquire, where the maker lives ; if he does not, and refrains from all inquiry, he should suffer the consequences of not being able to make a regular demand. In view of the peculiarities of the contract of indorsement and of the rights and responsibilities resulting therefrom, the holder of a promissory note should certainly be held to the exercise of such diligence in this respect as ordinary foresight and prudence would suggest; and in the absence of any effort he should, we think, be held to be affected with knowledge of that which by reasonable diligence he could have readily ascertained. As the maker's known residence and place of business, at the making of the note, was in the city of Wheeling, where he was the proprietor of the St. James Hotel, and not in the city of Pittsburgh, and as it did not appear that afterwards he had any other, it would seem that Wheeling was the place where inquiry should have been made. For if Scranage was at the time in Greenbrier or Kanawha county, looking after his lands, he may have left behind him some provision for the note ; indeed, although absent, for anything that appears, his errand may have been of a merely transient or temporary character, his residence and place of business remaining in Wheeling. That portion of the charge of the learned court, therefore, in which the

jury was instructed that as the note was dated in Pittsburgh it was sufficient to present it for payment there to bind the indorsers, under the special facts of the case is clearly erroneous.

Thus far we have considered the case apart from, and altogether independent of, the alleged promise of Oxnard to pay the note when it was presented to him by Mr. Hughes after protest. As to the circumstances under which that promise was made, much depends upon the testimony of Hughes, who says that he exhibited to Oxnard not only the note but the protest of it. If this be so, and Oxnard does not positively deny it, the latter had an opportunity to know with certainty the degree of diligence actually exercised by the holder in the presentment. He would in the formal certificate see that there was no presentment of the note at the place of the maker's residence, or to the maker in person; that the note was in the hand of a notary at Pittsburgh, and that inquiry was made for the maker at that place only. If, with a knowledge of these facts before him, the defendant, upon his promise to pay the note, obtained forbearance and the indulgence of the plaintiff, he cannot now repudiate his promise—he must pay as he agreed. Such a promise was a clear waiver of the laches of the plaintiff, and neither presentment, demand, protest nor notice need be shown. The general principle seems now to be settled in this country that where no demand has been made or notice given a promise to pay after maturity, with a full knowledge of the laches, is binding: Parsons on Notes, etc., 595–601. Byles, in his Treatise on Bills, 237, lays down the rule thus: A promise to pay will entirely dispense with proof of presentment or notice, and will throw on the defendant the double burden of proving laches, and that he was ignorant of it. (See also 3 Kent's Com. 113; Chitty on Bills, 539; and Parsons on Notes, etc., 595, and cases there cited.)

In our own state the law would seem to be as well settled on this point as elsewhere. "That a subsequent promise to pay the note by an indorser who has full knowledge of all the facts amounts to a complete waiver of the want of due notice," says Mr. Justice STRONG in Sherer *v.* Bank of Easton, 9 Casey 134, "is settled, and settled as a matter of law; so does a part payment. Some of the cases assert that it is evidence from which a jury may infer that demand was duly made and notice given, but many others declare it to be a waiver of notice itself. Levy *v.* Peters, 9 S. & R. 125, seems to assert that it is both. TILGHMAN, C. J., said that an acknowledgment of liability (to which he held a partial payment to be equivalent), carries with it internal evidence that the drawer knew that

[Oxnard v. Varnum.]

due diligence had been used by the holder, or even if it had not that still the drawer confessed that he was under an obligation to pay. In Duryee v. Dennison, 5 Johns. 248, where it distinctly appeared affirmatively that there was no proper demand and notice, the indorser was held liable, on the ground that he subsequently agreed to consider the demand and notice as made in due time and himself liable as indorser, and this without any new consideration for the agreement. The subsequent promise was held to be, not evidence of due demand and notice (for confessedly there had been none such), but a waiver of any demand or notice at all."

So, in Loose v. Loose, 12 Casey 538, where the authorities are collected and the whole subject discussed, it was distinctly held that a promise to pay by the indorser, after default of payment by the maker, not only dispenses with proof of presentment and notice, but throws on the defendant the burden of proving the laches of the holder, and that the defendant was ignorant of the facts at the making of the promise. "Regarding it as a waiver," says the court in the case cited, "it, of course, must be essential that the party making it knew the laches which he is alleged to have excused, for waiver is not without intention. There is, however, very great harmony in the decisions, in holding that a promise or acknowledgment itself raises a presumption that the drawer of the bill or the indorser of the note was acquainted with the laches of the holder, which his promise is alleged to have waived. I know of but one case in which the opposite doctrine has been distinctly asserted. That is the case of Trimble v. Thorne, 16 Johns. 152, and it has often been spoken of with disapprobation by other courts: Breed v. Hillhouse, 7 Conn. 523; Kernan v. McRea, 7 Porter (Ala.) 184; and it was finally overruled in New York in Tebbetts v. Dowd, 23 Wend. 379)." The same principle is recognized in the recent case of Moyer's Appeal, 6 Norris 129.

The question on this branch of the case was therefore one for the determination of the jury, but we cannot distinguish in the verdict as to the effect of that portion of the charge relating to the presentment and demand at Pittsburgh, and the case must be reversed.

Judgment reversed, and venire facias de novo awarded.